## Keyser *et al.* *versus* Evans *et al.*

One tenant in common died indebted to his co-tenants, and apparently insol-
vent; the surviving owners and their representatives, during nearly forty
years, paid the taxes and ground-rent on the premises; mortgaged the pro-
perty; and, at different times, erected and re-erected buildings thereon suitable
for their business, and received the profits: *Held,* that these facts, though not
conclusive evidence of an ouster of the heirs of the deceased co-tenant, should
have been submitted to the jury, with the instruction, that, if true and unex-
plained, they would justify the finding of the ouster claimed to have taken
place.

ERROR to the District Court of *Philadelphia.*

This was an ejectment by George M. Evans and others, heirs
at law of Oliver Evans, deceased, against Elhanan W. Keyser and
Daniel L. Woods, the executors and devisees of J. P. D. Muhlen-
berg, deceased, and others, for two ninth parts of a lot of ground
in the city of Philadelphia.

In the year 1816, James and Andrew Hamilton conveyed this
lot to Oliver Evans, James J. Rush, and J. P. D. Muhlenberg,
iron founders, doing business under the name of Evans, Rush
& Muhlenberg, upon ground-rent, as tenants in common. In
1819, the grantees moved upon the lot, where they carried
on business until the latter part of that year, when Oliver
Evans died. Prior, however, to his death, they built a furnace
and frame building on the lot, the expenses of which were paid
for with the funds of the partnership. At the time of Oliver
Evans's death he was indebted to the firm over $20,000.

The two surviving partners continued in possession, and carried
on the business as Rush & Muhlenberg, until 1845, or thereabouts,
when Mr. Rush also died. Mr. Muhlenberg then alone continued
in possession until his death, which took place in 1847, and his
executors, the plaintiffs in error and defendants below, held the
premises under his will. In the year 1822, Rush & Muhlenberg
executed a mortgage to the city of Philadelphia for two-thirds
of this property, and in 1826, they openly claimed the whole, by
executing a mortgage for the whole lot.

In the year 1822, in 1836, and at divers other times, Rush
& Muhlenberg improved and repaired the buildings; and in 1836
they entirely rebuilt and enlarged them, (the old buildings having
been destroyed by fire, with the exception of an old stack of the
furnace) at an expense of from eight to ten thousand dollars.

Rush & Muhlenberg, after the death of Evans in 1819, paid the
ground-rent and taxes, and continued to do so until the bringing
of this suit, a period of thirty-nine years, expending in such pay-
ments over $25,000.

[Keyser *et al. v.* Evans *et al.*]

On the trial, the defendants' counsel submitted the following points, upon which they requested the court to charge the jury :—

1. The joint possession was the possession of a partnership firm ; when one died it went, like other partnership property, to the survivors, chargeable with the debts of the copartnership, and with any balance due from one copartner to another, on winding up the affairs of the firm.

2. That on the death of Oliver Evans, the real estate vested in Rush & Muhlenberg, as trustees for the whole concern ; and the heirs at law of Oliver Evans took no interest in the real estate, until after the payment of the partnership debts, and the adjustment of the equitable and legal claims of the different members of the firm, as between themselves.

3. If the jury believe that Rush & Muhlenberg, as tenants in common, entered upon the whole land and took the profits, and exclusively claimed the whole for twenty-one years, the jury ought to presume an actual ouster, though none be proved.

4. That, if the jury are of opinion that Rush & Muhlenberg took the whole profits of the real estate named in the deed, under a claim of exclusive right, signified by acts of exclusive ownership over it for twenty-one years, the possession of the defendants is adverse to that of the plaintiffs, and they are entitled to a verdict.

5. That the possession of a tenant in common is to be deemed adverse from the time he exclusively claims the whole, such claim being indicated by unequivocal acts, openly and notoriously imparting a claim of exclusive right, and of such a nature as to apprise the co-tenant of the existence of the claim.

6. If Oliver Evans had a legal title, arising from the fact that his name appears as one of the grantees in the original deed, the defendants have the right to hold his heirs at law responsible for the one-third of the amount expended by Rush & Muhlenberg in the buildings, and in payment of ground-rent, taxes, and repairs. The sums laid out by the defendants in these items, after giving the plaintiffs credit for the one-third of the rents, give an equity as against the naked legal title of Oliver Evans, in which the jury should protect the plaintiffs by the terms of their verdict, if they should.find the legal title in the defendants.

The learned judge affirmed the defendants' fifth point, but refused to charge as requested in the others ; and a verdict and judgment having been rendered for the plaintiffs below, the defendants removed the cause to this court, and here assigned for error, the refusal of the court below to charge the jury as requested.

*A. M. Stewart, J. M. Rush,* and *T. S. Smith,* for the plaintiffs in error.—The facts proved in evidence, if they did not, of themselves, constitute an *ouster,* went far towards that point, as

· [Keyser *et al. v.* Evans *et al.*]

showing an adverse possession against the co-tenant: Morris v. Vanderen, 1 *Dall.* 67; Frederick v. Gray, 10 *S. & R.* 182; Mehaffy v. Dobbs, 9 *Watts* 363; Law v. Patterson, 1 *W. & S.* 191. The character of adverse possession is given by the nature of the acts done by the party: 6 *Barr* 227; 6 *W. & S.* 318; 6 *Barr* 211; 10 *Watts* 142; Wilson v. Collishaw, 1 *Harris* 277; Brown v. McCoy, 2 *W. & S.* 307.

*Bullitt* and *McMurtrie*, for defendants in error.—The judge left the fact of an actual ouster to the jury; the complaint is that he. did not charge that the evidence was conclusive of an *ouster* in point of law. This would have been clearly wrong: Nickle v. McFarlane, 3 *Watts* 165; Galbreath v. Galbreath, 5 *Watts* 146; Lodge v. Patterson, 3 *Watts* 76; Hart v. Gregg, 10 *Watts* 185, 189, 191; Hall v. Mathias, 4 *W. & S.* 331; Graffius v. Tottenham, 1 *W. & S.* 492.

The opinion of the court was delivered by

PORTER, J.—In the skeleton of the charge which this record furnishes, contained in fewer words than I have now written, and composed of the simple note of affirmance or denial of the defendants' propositions, the difficulty is to discover on what principle the cause was ruled. The mere reception of profits by one tenant. in common, is an insufficient foundation for the presumption of an ouster of his co-tenant. It is just as true, that from an exclusive occupancy and enjoyment of profits for a longer period than the time relied on by these defendants, the jury were not bound to find the fact of an ouster. The reasons are obvious. The possession of one tenant in common is lawful. In it there is nothing to awaken the suspicion of an exclusive claim. The inference is that he holds for both, until a hostile intention appears, and this must be disclosed by unequivocal acts fitted to apprise the co-tenant of the existence of an adverse holding. So far as he went, the judge was right, but the jury heard nothing adapted to the facts which they were to decide. One tenant had died in debt to the others, and apparently insolvent. The surviving owners and their representatives during nearly forty years paid the taxes and ground-rent, for a suspension of these payments would have lost them the whole estate, comparatively worthless then, but valuable now. They mortgaged the property, and placed their mortgage on record. At different times, they erected and re-erected buildings suitable to their business. They received the profits of the land, smaller probably than its expenses, but large in the aggregate, without accounting or being called to account. When the property has become valuable, certain of the dead man's heirs come forth and recover a proportionate part, without paying a dollar of the expenditures. Considered separately, each of these

[Keyser *et al. v.* Evans *et al.*] .

facts may have been inconclusive; together they bore powerfully on the result, for if "improving lands, and receiving the rents, issues, and profits thereof, are in all cases the highest acts of ownership which can be exercised over them, and the exercise of these acts strongly marks the possession with exclusiveness and hostility," 6 *Barr* 211, the defendant's testimony ought to have given a preponderance to the scale. To tell the jury that perception of profits was insufficient, and that from all the facts in evidence they were not bound to presume an ouster, was to fall short of the mark. The facts tending to prove the ouster should have been submitted to the jury for their decision, with the instruction, that if found undenied or unexplained, and believed to be true, they would justify the finding of the ouster claimed to have taken place. In the defendant's propositions this idea was developed imperfectly, but sufficiently to have reached the mind of the court. Without noticing it, justice could not be done, and this continues to be one of the objects of trying causes.

Judgment reversed and a *venire de novo* awarded.